OPINION
{¶ 1} Defendant, Nathaniel J. Battle, III, appeals from his conviction and sentence for possession of powder and crack cocaine, possession of criminal tools, and having weapons while under disability.
 {¶ 2} After a one-month investigation of suspected drug activity at 453 Allwen Drive, in Dayton, which included *Page 2 
surveillance and four controlled drug buys using a confidential informant, Dayton police obtained and executed a drug search warrant at that residence on the night of December 15, 2005.
 {¶ 3} In the thirty minutes prior to the drug raid, police watching the home observed two or three vehicles pull up to the house and stop. Either the driver or passenger would then go inside, and one to two minutes later they would come back out and leave.
 {¶ 4} When the raid was conducted, four people were discovered inside that residence: Gwendolyn Sharp, Rondric Bogan, the lessee of the property, Jeffrey Hughes and Defendant, Nathaniel J. Battle, III. One person who was outside and in the process of leaving, Albert Bowling, was also detained by police. When police entered the residence, Defendant Battle was the only person in the living room, and was standing next to a wooden chair. Defendant immediately ran to the back portion of the home, where he tried to hide.
 {¶ 5} In the living room on top of a fireplace mantel police discovered powder cocaine, crack cocaine, marijuana, a plate with a razor blade on it, a digital scale with cocaine residue, and a cell phone. A wooden chair with a table in front of it were next to the fireplace. A loaded nine *Page 3 
millimeter semi-automatic handgun was lying on the floor next to the chair.
 {¶ 6} On the table was a television that was being used to play a video game. One set of controls for the video game was on the floor next to the chair. A coat was draped over the chair. From the chair anything on that fireplace mantel was within arm's reach. Ms. Sharp told police that Defendant had been sitting in that chair playing video games. Defendant claimed ownership of the coat draped over the chair and the cell phone police discovered on the fireplace mantel next to the drugs.
 {¶ 7} Defendant was indicted on one count of possession of cocaine, not crack, in an amount greater than twenty-five but less than one hundred grams, R.C. 2925.11(A), one count of possession of crack cocaine in an amount greater than five grams but less than ten grams, R.C.2925.11(A), and one count of possession of criminal tools, R.C.2923.24(A). Subsequently, Defendant was indicted on an additional charge of having weapons while under disability, R.C. 2923.13(A)(3).
Following a jury trial, the jury found Defendant guilty of both cocaine possession charges and the criminal tools charge. The trial court, which tried the having weapons under disability charge, found Defendant guilty of that offense. *Page 4 
The trial court sentenced Defendant to concurrent prison terms totaling three years. Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 8} "THE COURT ERRED IN OVERRULING DEFENDANT'S RULE 29 MOTION FOR ACQUITTAL ON COUNTS ONE, TWO AND THREE BECAUSE THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE THAT MR. BATTLE CONSTRUCTIVELY POSSESSED ANY CONTRABAND."
SECOND ASSIGNMENT OF ERROR
 {¶ 9} "MR. BATTLE'S CONVICTIONS ON COUNTS ONE, TWO AND THREE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE FAILED TO PRESENT EVIDENCE THAT MR. BATTLE CONSTRUCTIVELY POSSESSED ANY CONTRABAND."
 {¶ 10} In these related assignments of error, Defendant argues that his convictions are not supported by legally sufficient evidence and are against the manifest weight of the evidence, because the State failed to prove that he knowingly possessed the cocaine or criminal tools (digital scales) police discovered on the fireplace mantel.
 {¶ 11} When considering a Crim.R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions on whether *Page 5 
the evidence proves each element of the offense charged beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261. The motion will be granted only when reasonable minds could only conclude that the evidence fails to prove all of the elements of the offense.State v. Miles (1996), 114 Ohio App.3d 738.
 {¶ 12} A Crim.R. 29 motion challenges the legal sufficiency of the evidence. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 13} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements *Page 6 
of the crime proven beyond a reasonable doubt."
 {¶ 14} To prove that Defendant was guilty of violating R.C.2925.11(A), the State was required to prove, beyond a reasonable doubt, that Defendant knowingly possessed a controlled substance. To prove a violation of R.C. 2923.24(A), the State was likewise required to prove that Defendant possessed any device, instrument or article, with purpose to use it criminally.
 {¶ 15} "Knowingly" is defined in R.C. 2901.22(B):
 {¶ 16} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 17} "Possession" is defined in R.C. 2925.01(K):
 {¶ 18} "Possess or possession means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 19} Possession of a drug may be either actual physical possession or constructive possession. State v. Butler (1989), 42 Ohio St.3d 174. A person has constructive *Page 7 
possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. State v. Hankerson (1982),70 Ohio St.2d 87; State v. Wolery (1976), 46 Ohio St.2d 316.
 {¶ 20} Readily usable drugs found in very close proximity to a defendant may constitute circumstantial evidence sufficient to support a conclusion that he constructively possessed those drugs. State v.Miller, Montgomery App. No. 19174, 2002-Ohio-4197. In determining whether a defendant knowingly possessed a controlled substance, it is necessary to examine the totality of the facts and circumstances surrounding the incident.State v. Teamer, 82 Ohio St.3d 490, 492,1998-Ohio-193; State v. Pounds, Montgomery App. No. 21257,2006-Ohio-3040.
 {¶ 21} In this case the powder cocaine, crack cocaine and digital scales with cocaine residue were found on top of a fireplace mantel in the living room at 453 Allwen Drive, Dayton. Defendant was the only person in that room and near the drugs when police entered that home. A cell phone that Defendant admitted belonged to him was sitting on top of the fireplace mantel next to the drugs. Defendant's coat was draped over a chair next to the fireplace. From that chair *Page 8 
the contraband on top of the fireplace mantel was within arm's reach. In front of the chair was a table with a television on it that was displaying a video game. One of the people present when police entered the home, Gwendolyn Sharp, told police that Defendant had been sitting in the chair playing video games. As soon as police entered the home, Defendant ran to the back part of the house and tried to conceal himself.
 {¶ 22} Reasonable minds might find that Defendant was a visitor whose presence in the house had no connection with the drugs and related items found there. However, viewing the totality of this evidence in a light most favorable to the State, as we must, we conclude that a rational trier of facts could find beyond a reasonable doubt that Defendant constructively possessed the cocaine and digital scales on top of the fireplace mantel. Defendant's convictions are therefore supported by legally sufficient evidence.
 {¶ 23} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin *Page 9 
(1983), 20 Ohio App.3d 172, 175:
 {¶ 24} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, supra.
 {¶ 25} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 26} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 27} This court will not substitute its judgment for *Page 10 
that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 28} Defendant argues that the guilty verdicts are against the manifest weight of the evidence because, though he was found in close proximity to the drugs on the mantle, there is no direct evidence connecting him to those drugs, to which other persons who were in the house likewise had access.
 {¶ 29} All that is true, but it is also unlikely that those other persons, if they owned the drugs, would leave them open to availability to Defendant, who was the only person in the room where the drugs were found. Further, if Defendant was in the house for wholly benign purposes, as he contends, it's unlikely he would attempt to hide after officers entered the house.
 {¶ 30} The jury in this case did not lose its way simply because it chose to believe the State's witnesses and their version of these events, which are that from the chair next to the fireplace Defendant was able to exercise dominion and control over the cocaine and digital scales on the fireplace mantel, and therefore he constructively possessed those items. The credibility of the witnesses and the weight *Page 11 
to be given to their testimony were matters for the trier of facts, the jury, to decide. DeHass. Reviewing the entire record we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's convictions are not against the manifest weight of the evidence.
 {¶ 31} Defendant's first and second assignments of error are overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 32} "MR. BATTLE'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL WAS VIOLATED WHEN THE COURT ERRED IN NOT CONTINUING THE TRIAL AND PROCURING THE ATTENDANCE OF A DEFENSE WITNESS WHO HAD BEEN SUBPOENAED."
 {¶ 33} Defendant argues that the trial court abused its discretion and violated his right to due process of law by failing to grant a reasonable continuance of the trial sufficient to allow defense counsel to procure the attendance of a material defense witness. We disagree.
 {¶ 34} The grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial court, which will not be disturbed on appeal absent an abuse of the trial court's discretion.State v. Unger (1981), *Page 12 67 Ohio St.2d 65; Ungar v. Sarafite (1964), 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921. An abuse of discretion means more than simply an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v.Adams (1980), 62 Ohio St. 2d 151.
 {¶ 35} In evaluating a motion for a continuance, a court should note the length of the delay requested, whether other continuances have been requested and received, inconvenience to litigants, witnesses, opposing counsel and the court, whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived, whether defendant contributed to the circumstances which give rise to the request for a continuance, and other relevant factors depending upon the unique facts of each case. State v. Unger, supra.
 {¶ 36} Jeffrey Hughes, one of the people who was at 453 Allwen Drive when police raided that suspected drug house, was subpoenaed by defense counsel. Hughes did not appear at trial, however. Defense counsel proffered for the court Hughes' expected testimony that Defendant was at 453 Allwen Drive for the purpose of having his car repaired by Hughes. Additionally, Hughes would have testified that Rondric Bogan *Page 13 
was in the living room with Defendant playing video games just before police forcibly entered the residence.
 {¶ 37} Defendant's trial commenced on May 1, 2006. At approximately 9:30 a.m. on Wednesday, May 3, 2006, at defense counsel's request, the trial court recessed the trial until 2:00p.m. to allow defense counsel an opportunity to procure Hughes' attendance in court. Defense counsel reported to the court that she had contacted Hughes by phone and that he overslept and missed his ride to court.
 {¶ 38} When court reconvened at 2:00 p.m., Hughes had still not been located, despite defense counsel's efforts to call him and locate him at his home. At that point defense counsel requested that the trial court issue a material witness warrant for Hughes and have him arrested and brought to court. Over the State's objection, the trial court granted defense counsel's request and issued a material witness warrant for Hughes. The court also recessed the trial until Friday, May 5, 2006, at 8:30 a.m., to give authorities an opportunity to locate Hughes.
 {¶ 39} When the trial resumed on May 5, the court learned that the material witness warrant had not been served because Hughes could not be located. The trial court decided to proceed with the trial because "everything within reason" *Page 14 
had been done to find Hughes, to no avail.
 {¶ 40} On this record the trial court clearly did not abuse its discretion. To the contrary, the trial court made reasonable efforts to secure Hughes' attendance at trial. The trial court recessed the trial for nearly forty-eight hours to give defense counsel an opportunity to locate and procure Hughes' attendance, and the court enlisted the help of law enforcement in locating Hughes by issuing a material witness warrant. We agree with the trial court that everything within reason was done to procure Hughes' attendance at trial.
 {¶ 41} Defendant's third assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. And WALTERS, J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1