OPINION
{¶ 1} Defendant, Russell Terrell, appeals from his conviction and sentence for domestic violence and assault.
 {¶ 2} The victim in this case, Alice Carter, is the mother of Defendant's two year old son, Hollis Terrell. At the time of this incident Defendant and Carter were separated and were *Page 2 
not getting along. They communicated with each other only through third parties in order to avoid confrontations. A few days prior to July 24, 2006, Carter allowed Defendant to use her Sam's Club card to purchase diapers for their son. Carter had given the card to Defendant's aunt, who passed it on to Defendant.
 {¶ 3} On July 24, 2006, Defendant called Carter several times at her place of employment. Carter talked to Defendant once, but she was busy at work and she hung up the phone on him. A couple of hours later, Defendant came to Carter's place of employment, the Montgomery County Treasurer's Office, which is located at 451 W. Third Street in Dayton.
 {¶ 4} Carter did not see Defendant approach her work cubicle. Carter's co-worker, Latoya Isabelle, saw Defendant lean over Carter's cubicle and heard Defendant call Carter a bitch, and saw Defendant throw something. Carter was on the phone at the time and she saw an arm reach over her cubicle and fling something at her that hit her in the face and then dropped down onto her desk. That article was the Sam's Club card she had let Defendant use.
 {¶ 5} Carter's co-worker, Latoya Isabelle, immediately came over to Carter's cubicle and she and Carter discovered that Carter had a small cut above her eye. The Montgomery *Page 3 
County Sheriff's Office was notified of the incident and took photographs of Carter's face.
 {¶ 6} Another of Carter's co-workers, Kathy Littlejohn, was returning from lunch when she got onto the same elevator with Defendant. She thought Defendant seemed angry. Defendant followed Littlejohn into the Treasurer's Office, thinking that he was an angry customer. As Littlejohn was preparing to enter a secured area of the office, she heard an outburst, a man's voice, coming from the area where Carter's cubicle is located. When Littlejohn turned around and looked, she saw Defendant walking quickly out of the Treasurer's Office.
 {¶ 7} Defendant was subsequently charged via complaints filed in Dayton Municipal Court with one count of domestic violence involving causing physical harm, R.C. 2919.25(A), one count of domestic violence involving making threats of force, R.C. 2919.25(C), one count of assault, R.C. 2903.13(A), one count of menacing, R.C. 2903.22(A), and one count of telephone harassment, R.C. 2917.21(A)(5). The matter was tried to the court.
 {¶ 8} At trial, Defendant testified that Carter had called his father, and as a result of that call Defendant attempted to return Carter's Sam's Club card to her. Defendant wanted *Page 4 
to return the card to Carter without having any contact with her. Defendant went to Carter' place of employment and walked over to Carter's cubicle and tossed the Sam's Club card toward Carter's computer screen, which is an area away from where Carter usually sits at her desk. Defendant did not know at that time that Carter was in her cubicle. Defendant heard the card hit Carter's computer screen, and he had no idea that the card had hit Carter.
 {¶ 9} At the conclusion of the State's case, and pursuant to Defendant's Crim.R. 29 motion for acquittal, the trial court dismissed three of the five charges including domestic violence (making threats of force), menacing and telephone harassment. The trial court refused to dismiss the remaining domestic violence (causing physical harm) and assault charges. Following the close of all of the evidence, the court found Defendant guilty of those offenses. The trial court merged the offenses for sentencing purposes and sentenced Defendant only on the domestic violence to sixty days in jail, and a one hundred dollar fine plus court costs. The court suspended the sixty day jail term on condition that Defendant complete a four day domestic violence anger management program.
 {¶ 10} Defendant timely appealed to this court from his conviction and sentence. The trial court stayed execution of *Page 5 
Defendant's sentence pending the outcome of this appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 11} "THE TRIAL COURT SITTING WITHOUT A JURY ERRED BY OVERRULING DEFENDANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL AT THE CLOSE OF THE STATE'S CASE BECAUSE THE EVIDENCE PRESENTED BY THE STATE WAS LEGALLY INSUFFICIENT TO SUSTAIN CONVICTIONS FOR DOMESTIC VIOLENCE AND ASSAULT."
SECOND ASSIGNMENT OF ERROR
 {¶ 12} "THE JUDGMENT OF THE TRIAL COURT SITTING WITHOUT A JURY AS TO COUNTS 1 (ASSAULT) AND 2 (DOMESTIC VIOLENCE: HARM) WAS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST, THEREFORE, BE REVERSED."
 {¶ 13} In these related assignments of error Defendant argues that his convictions are not supported by legally sufficient evidence and are against the manifest weight of the evidence because the State failed to prove that he "knowingly" caused physical harm to the victim, Alice Carter.
 {¶ 14} In State v. Battle, Montgomery App. No. 21644, 2007-Ohio-2977, this court observed:
 {¶ 15} "{¶ 11} When considering a Crim.R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions on whether *Page 6 
the evidence proves each element of the offense charged beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261. The motion will be granted only when reasonable minds could only conclude that the evidence fails to prove all of the elements of the offense.State v. Miles (1996), 114 Ohio App.3d 738.
 {¶ 16} "{¶ 12} A Crim.R. 29 motion challenges the legal sufficiency of the evidence. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 17} "{¶ 13} `An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the *Page 7 
essential elements of the crime proven beyond a reasonable doubt.'"
 {¶ 18} To prove the offenses of which Defendant was convicted, domestic violence in violation of R.C. 2919.25(A) and assault in violation of R.C. 2903.13(A), the State was required to prove beyond a reasonable doubt that Defendant knowingly caused physical harm to another person. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B)
 {¶ 19} R.C. 2901.22(E) provides: "When knowledge suffices to establish an element of an offense, then purpose is also sufficient culpability for such an element." R.C. 2901.22(A) states: "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 20} Defendant readily admits that the uncontroverted evidence in this case shows that he tossed, flung or threw a *Page 8 
plastic Sam's Club membership card into Alice Carter's cubicle at work, and that the card struck Carter in the face above the eye, causing a small cut. Defendant argues, however, that given the size, weight and nature of the Sam's Club card he tossed into Carter's cubicle, an article which is neither heavy nor sharp, but rather is very similar to an ordinary credit card, the evidence is insufficient to prove that Defendant's conduct would probably cause an injury to Carter.
Accordingly, the evidence is insufficient to prove that Defendant "knowingly" caused physical harm to Carter.
 {¶ 21} Alice Carter testified at trial that she saw an arm reach over her cubicle wall and fling something at her which turned out to be her Sam's Club card. The card struck Carter in the face just above the eye, causing a small cut. Carter's co-worker, Latoya Isabelle, testified that Defendant leaned over Carter's cubicle, called her a bitch, and threw something. Another co-worker, Kathy Littlejohn, testified that Defendant appeared to be angry when he entered the Treasurer's Office. As Littlejohn was preparing to enter a secured area in the office, she heard an outburst, a man's voice, coming from the area where Carter's cubicle is located. When she turned around and looked, she saw Defendant walking quickly out of the office. *Page 9 
 {¶ 22} Viewing the totality of this evidence in a light most favorable to the State, as we must, Defendant's attempts to minimize his wrongful conduct by emphasizing the relatively small size of the object he threw are unavailing. While the Sam's Club card Defendant threw into Carter's work cubicle may not be inherently dangerous, the evidence is sufficient to show that it became dangerous because of the way in which it was used by Defendant. A rational trier of facts, the trial court here, could find beyond a reasonable doubt that Defendant purposely caused physical harm to Alice Carter in acting as he did. Purposeful conduct satisfies a requirement that a defendant acted "knowingly." R.C. 2901.22(E). Defendant's convictions are therefore supported by legally sufficient evidence.
 {¶ 23} "{¶ 23} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v.Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v.Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 24} "{¶ 24} `[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers *Page 10 
the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' Accord: State v. Thompkins, supra.
 {¶ 25} "{¶ 25} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve.State v. DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 26} "{¶ 26} `[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.' Id., at p. 4.
 {¶ 27} "{¶ 27} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley *Page 11 
(Oct. 24, 1997), Champaign App. No. 97-CA-03." Battle, supra.
 {¶ 28} Defendant argues that the guilty verdicts are against the manifest weight of the evidence because the evidence fails to prove that he "knowingly" caused physical harm to Alice Carter. More specifically, the evidence does not demonstrate that tossing the Sam's Club card into Carter's work cubicle would probably cause or result in physical harm to Carter. In that regard Defendant testified at trial that his intention was to return the Sam's Club card to Carter without having any contact with her. Defendant tossed the Sam's Club card at Carter's computer screen, which is an area away from where Carter would ordinarily be seated at her desk. Defendant heard the card hit the computer screen, and he was not aware when he tossed the card that Carter was even inside her cubicle, much less that the card hit her.
 {¶ 29} In reality, Defendant is complaining because the trial court did not believe his version of the events. As we previously discussed, the evidence presented by the State, if believed, demonstrates that Defendant appeared angry when he entered the Treasurer's Office, that he approached Carter's cubicle, leaned over the barrier, called Carter a bitch, and flung Carter's Sam's Club card at her that struck her above *Page 12 
the eye, causing a small cut. The trial court, sitting as the trier of facts, did not lose its way in this case simply because it chose to believe the State's witnesses and their version of these events. The credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts, the trial court here, to decide. DeHass. The testimony of the State's witnesses, if believed, is not contrary to Defendant's guilt, and therefore no manifest miscarriage of justice occurred. State v. McDaniel (May 1, 1998), Montgomery App. No 16221.
 {¶ 30} Reviewing this entire record we cannot say that the evidence weighs heavily against a conviction, that the trial court lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's convictions are not against the manifest weight of the evidence.
 {¶ 31} Defendant's assignments of error are overruled. The judgment of the trial court will be affirmed.
 FAIN, J. And DONOVAN, J., concur. *Page 1