OPINION
The matter is before the Court on the Notice of Appeal of Anthony Collins, filed August 15, 2007. On September 18, 2006, Collins was indicted on one count of child endangering, in violation of R.C. 2919.22(A). The indictment further alleged that Collins' conduct resulted in serious physical harm to the victim, pursuant to R.C. 2919.22(E)(2)(c). On March 30, 2007, Collins was indicted on one count of rape of a child under the age of ten, in *Page 2 
2 violation of R.C. 2907.02(A)(1)(b). Following a jury trial, Collins was found guilty on July 12, 2007 of child endangering and rape of a child under ten. On July 26, 2007, Collins was sentenced to life without parole on the rape charge, and to five years on the child endangering charge, to be served consecutively to the rape sentence.
The events giving rise to this matter began on June 10, 2006, when the then six year old victim herein was left in Collins' care. The victim lived with her father, G.F., and his girlfriend, D.L., at 5656 Markey Rd., Harrison Township. Collins and B.C., G.F.'s stepbrother, resided in a separate smaller house on the property, next to G.F.'s home. On the afternoon of June 10, 2006, D.L., Collins and the victim were inside the main residence on the property. D.L. was unaware of G.F.'s whereabouts, having not seen him since the night before. In the evening, D.L. asked Collins to care for the victim so that she could attend a party. Collins agreed, and D.L. left the home at around 6:30. When she left, the victim was "fine, jumping around, and watching TV, cartoons on TV."
 {¶ 1} Upon her return, around 8:15, D.L. found the victim sitting in the middle of a loveseat, crying. The victim was wearing a different outfit than the one she had on when D.L. left the house. D.L. asked the victim what was wrong, and the victim stated, "Tony tried to have sex with me." D.L. looked for Collins in the main house and could not find him. D.L. observed the victim get up "from the couch and she started staggering around like she was drunk or something." D.L. asked the victim what was wrong with her, and the victim stated that Collins had given her "two blue pills and two white pills."
 {¶ 2} D.L. gave the victim a glass of milk and attempted to leave to search for Collins in the small house next door. Upon hearing a noise, she turned around and observed that the victim "had fallen completely overtop of the coffee table, knocked the milk off." D.L. put the *Page 3 
victim back on the couch and left to search for Collins next door. When she returned, the victim was "reaching for stuff in the sky like she was hallucinating, like something was there for her to grab." D.L. dialed 911. According to D.L., before the paramedics arrived, "all [the victim] wanted to do was sleep."
 {¶ 3} Gerald Barnes, a Deputy Sheriff with the Montgomery County Sheriff s office testified that he was dispatched to the victim's residence the night of the offense, arriving at approximately the same time as the medics. Barnes searched the small house for Collins and was unable to locate him there, but he observed two pill bottles in Collins' living area, along with some loose marijuana.
 {¶ 4} Brian Lewis, a detective with the Montgomery County Sheriff s Office, testified that he responded to Children's Medical Center on June 10, 2006, and that he observed the victim's sedated appearance and learned from the victim's doctor and other deputies that the victim had been given some sort of drugs. Lewis then went to the Markey Rd. address, and there he retrieved the two bottles of prescription pills from Collins' living area, which he took to the victim's doctor at the hospital.
 {¶ 5} The victim was transported to Children's Medical Center. Dr. Kevin Johnson attended to the victim, and upon his initial observation of her, Johnson "was concerned just walking into the room because she was groggy, sleepy, and her speech was slurred." The victim told Johnson that Collins had given her a blue pill and a white pill, that she had seen Collins' "private parts," and that Collins had attempted to have sex with her. Johnson was concerned about the possible effects of the drugs in the victim's system, and he admitted her to the hospital overnight for observation.
 {¶ 6} Johnson administered a rape kit, which he explained at trial contains envelopes *Page 4 
for swabs of the victim's pharynx, genital area, anus/rectum, skin, and envelopes for the collection of clothing, hair samples and fingernail scrapings. Blood and urine samples were also obtained. Johnson examined all of the victim's body parts, including her vaginal and rectal area, with a Wood's Lamp, which is a black light under which certain stains, such as semen, appear fluorescent. Johnson testified that he did not locate any staining on the victim with the Wood's Lamp, and that he did not observe anything abnormal or any injuries in her genital area. On cross-examination, Johnson testified that, in obtaining the anal/rectal swab, that he touched the victim's anus and also inserted the swab into the victim's rectum.
 {¶ 7} Dr. Lori Vavul-Roediger, a physician at Children's Medical Center, and also the Medical Director for the Care Clinic, the Department of Child Advocacy and Care House, who has been recognized as an expert in pediatrics as well as in the subspecialty field of child abuse pediatrics, provided expert testimony regarding the victim's medical records, which she reviewed. According to Vavul-Roediger, "in [her] clinical experience as well as in medical literature, overall it's very well known that the majority of children * * * where concerns for sexual abuse are reported, the overwhelming majority of children, 90 to 95 percent of children have normal or non-specific genital and anal examination findings.
 {¶ 8} "* * *
 {¶ 9} "Again, only about five percent of those children are going to have a definitive abnormal finding that is clearly diagnostic of sexual abuse occurring." Vavul-Roediger provided several reasons to support her statistics, including the possible lapse of time and healing between the abuse and the examination, the possibility that the abuse was inflicted in such a way as to not cause an injury to begin with, the "elastic," "stretchy" nature of the anus, the possible use of lubrication, and the possible use of sedatives that make the victim relaxed *Page 5 
and not tense.
 {¶ 10} Laureen Marinetti, the chief forensic toxicologist for the Montgomery County Coroner's office, analyzed the blood and urine samples taken from the victim, and she was able to confirm the presence of Nortriptyline, an antidepressant prescribed for adults. According to Marinetti, the drug in a child "could make them fall asleep, be groggy, be dizzy, be uncoordinated, be kind of almost like, almost like alcohol intoxication." Further, Johnson testified that the drug is not used in children and "can have some pretty bad cardiovascular effects. It can cause arrhythmias, seizures, and it can even cause death." Marinetti also detected Exzopiclone, more commonly known as Lunesta, in the victim's system. Marinetti stated the drug is a sedative hypnotic drug that would make a child "go to sleep, a deep sleep, hard to arouse sleep. It also has an effect called * * * anterograde amnesia. But basically what it means is that you don't remember, you don't have any short-term memory. Something will happen to you and you'll never put it in your long-term memory so you'll think it never happened."
 {¶ 11} Mary Cicco, a forensic scientist at the Miami Valley Regional Crime Laboratory, examined the evidence contained in the rape kit. According to Cicco, sperm cells were identified on the oral swabs, but insufficient DNA was found on them to detect a male DNA profile. Semen was also detected on the vaginal swabs, but again, there was not enough to obtain a DNA profile. Sperm cells were detected on the victim's anal swabs, and "the foreign component on the rectal swabs * * * matches Anthony Collins to a reasonable degree of scientific certainty." Sperm cells were also detected on the victim's panties, and "the sperm fracture matches Anthony Collins to a reasonable degree of scientific certainty." Semen was detected on the victim's blue jeans and shirt, and the DNA profiles again matched the profile of *Page 6 
Collins to a reasonable degree of scientific certainty.
 {¶ 12} Deputy John Campbell, also with the Montgomery County Sheriffs Office, testified that he responded to the Markey Rd. address. After the victim was removed by the medics, Campbell searched the main house and the smaller one. In the course of his search of the smaller house, Campbell observed the two bottles of prescription pills and five marijuana plants.
 {¶ 13} Anthony M. Michael, a deputy with the Montgomery County Sheriffs Office testified that he and another deputy were dispatched to the Markey Rd. address to assist Deputy Matt Snyder retrieve the marijuana plants. In the course of retrieving the plants, the officers looked behind a nearby curtain, and there, hiding, they found Collins and took him into custody.
 {¶ 14} Collins asserts nine assignments of error. His first assignment of error is as follows:
 {¶ 15} "THE TRIAL COURT ERRED IN OVERRULING COLLINS' MOTION FOR A MISTRIAL BASED ON PROSECUTORIAL MISCONDUCT DURING THE STATE'S REBUTTAL CLOSING ARGUMENT."
 {¶ 16} Collins argues that the prosecutor "made an assertion which was clearly intended to mislead the jury as to application of a legal presumption which could not be corrected by an instruction from the trial court." Collins further argues, the prosecutor "insinuated that Collins had lost the presumption of innocence because he did not testify or present evidence."
 {¶ 17} The State responds, "the prosecutor was arguing the State presented evidence that was more than sufficient to prove Collins' guilt * * * [and] to overcome the presumption of innocence." The State also argues that a "prosecutor may comment upon the failure of the defense to offer evidence in support of its case." *Page 7 
 {¶ 18} "The decision whether to grant a mistrial lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. (Internal citation omitted). An abuse of discretion means more than an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court." (Internal citation omitted). State v. Williams, Montgomery App. No. 22126, 2008-Ohio-2069.
 {¶ 19} "Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution." R.C. 2901.05(A).
 {¶ 20} "The Fifth Amendment forbids either unfavorable comment by the prosecutor on a defendant's failure to testify or the drawing of unfavorable inferences from his silence." (Internal citation omitted).
 {¶ 21} "We have held unfavorable direct comment upon an accused's failure to testify to be prejudicial error." (Internal citation omitted). State v. Zimmerman (May 3, 1984), Greene App. No. 83CA22.
 {¶ 22} Collins objects to the following remarks during the prosecutor's brief rebuttal argument in closing:
 {¶ 23} "The presumption of innocence, we've talked about that at the beginning of this trial. The presumption that this defendant had is gone. He no longer enjoys that presumption because now you have heard more than sufficient evidence, credible evidence from all the witnesses that the State presented that have not been disputed in any way, shape or form."
 {¶ 24} In overruling Collins' motion for mistrial, the trial court stated, "the Court's going to make a finding that the instructions given to the jury is that the defendant * * * is to be presumed innocent until his guilt is established beyond a reasonable doubt * * * . *Page 8 
 {¶ 25} "The government's argument was that proof beyond a reasonable doubt has been presented, therefore, the presumption of innocence is removed. That's the way the Court heard it, * * * ."
 {¶ 26} Having thoroughly reviewed the record, we conclude that the prosecutor's comments herein were meant to direct the jury's attention to the strength of the State's evidence, and they were not a direct comment on Collins' silence. Arguing that the State's evidence stands unrebutted does not implicate Collins' Fifth Amendment rights, and the remarks were not improper. Further, the trial court properly instructed the jury, "a defendant is presumed innocent until his guilt is established beyond a reasonable doubt." There being no abuse of discretion, Collins' first assignment of error is overruled.
 {¶ 27} We will consider Collins' second and third assignments of error together.
 {¶ 28} Collins' second assignment of error is as follows:
 {¶ 29} "COLLINS WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY DEFENSE COUNSEL'S FAILURE TO OBJECT TO THE EXPERT TESTIMONY OF DR. LORI VAVUL-ROEDIGER."
 {¶ 30} Collins' third assignment of error is as follows:
 {¶ 31} "IT WAS PLAIN ERROR FOR THE TRIAL COURT TO ALLOW DR. VAVUL-ROEDIGER TO TESTIFY WITHOUT DISCLOSING THE FACTS OR DATA UNDERLYING HER OPINION"
 {¶ 32} Collins argues, citing Evidence Rules 702 and 705, that he was denied effective assistance of counsel based upon his counsel's failure to object to Vavul-Roediger's qualifications and opinion testimony. According to Collins, "Defense counsel allowed Dr. *Page 9 
Vavul-Roediger to opine that 90 to 95 percent of children believed to be sexually abused have normal genital or anal examinations. Counsel allowed her to quote these percentages without elaborating on her qualifications to render such an opinion or the source of her data." He further argues that it was plain error for the court to allow Vavul-Roediger to "render this opinion without disclosing the facts or data upon which she relied."
 {¶ 33} The State responds that "Collins has failed to demonstrate either prong of the test for ineffective assistance of counsel." According to the State, "Vavul-Roediger's testimony was not opinion evidence at all" but rather "was personal knowledge evidence."
 {¶ 34} Collins replies, "Her opinion would be irrelevant and misleading if grounded on facts ultimately discounted by the jury. The jury could not adequately assess the validity of expert testimony without knowing the particular facts which supported her testimony," in reliance upon Wells v. Miami Valley Hospital (1990), 90 App. 3d 840, 857, 631 N.E.2d 642.
 {¶ 35} In determining whether a defendant has received the effective assistance of trial counsel, we apply the standards set forth inStrickland v. Washington (1984), 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is *Page 10 
reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.
 {¶ 36} "The Ohio Supreme Court has enunciated a similar test for determining claims for ineffective assistance of counsel:
 {¶ 37} "`2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard or reasonable representation and, in addition, prejudice arises from counsel's performance.' (Internal citations omitted).
 {¶ 38} "`3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' (Internal citations omitted).
 {¶ 39} "In Strickland, supra, the Supreme Court instructed:
 {¶ 40} "`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (Internal citations omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional *Page 11 
assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' (Internal citations omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'" (Internal citations omitted). State v. Lloyd (March 31, 1999), Montgomery App. No. 15927.
 {¶ 41} "The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.
 {¶ 42} "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant *Page 12 
decisions in the exercise of reasonable professional judgment."Strickland, supra, at 689-690.
 {¶ 43} "Evid. R. 703 states:
 {¶ 44} `The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing.'
 {¶ 45} "Evid. R. 705 provides:
 {¶ 46} `The expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise.'
 {¶ 47} "Additionally, Evid. R. 702 permits expert testimony in situations where `the testimony will aid the trier of fact in understanding the evidence or in determining a fact in issue.'" (Internal citation omitted). State v. Woodruff (Apr. 27, 2001), Montgomery App. No. 18164 (holding counsel was not ineffective for failing to object when three of the State's expert witnesses testified, based on their own personal experience, that it was not unusual for a criminal investigation to yield no physical evidence, and determining that the testimony was admissible "because it related to matters beyond the knowledge or experience possessed by lay persons.")
 {¶ 48} "There are certain things that an expert, by reason of his expertise, knows. * * * When providing background information, * * * we cannot expect an expert to footnote every statement with a recitation of his direct observation of the phenomenon, or a bibliography explaining how he knows his statement to be true. * * * When testifying as to broad patterns rather than specific opinions, the same level of foundation is not required." Wightman v. Consolidated Rail Corp., 86 Ohio St.3d 431,715 N.E.2d 546, 1999-Ohio-119. ("A distinction can be made between background information and an opinion about causation. A doctor *Page 13 
testifying in a medical malpractice case regarding a failed heart surgery, for instance, need not set forth the underlying facts regarding his knowledge of the basic makeup of the thoracic cavity.")
 {¶ 49} As in Wightman, Vavul-Roediger was "merely testifying as to facts in [her] area of expertise." The average lay juror does not know how seldom the sexual abuse of a child results in an observable injury and therefore has no means to determine how much importance to place on the absence of such injury. In the course of her testimony, Vavul-Roediger provided multiple reasons for the low incidence of physical injury in sexual abuse cases involving children, based upon her experience as a physician who, on a day to day basis, performs inpatient and outpatient evaluations on children who may have been physically and or sexually abused.
 {¶ 50} We note that Collins' reliance upon Wells v. Miami ValleyHospital s misplaced. Wells, a pregnant woman with preeclampsia, died after undergoing a caesarean section that included the insertion of a central venous pressure ("CVP") catheter. The trial court determined that the testimony of two doctors, on the issue of liability, was inadmissable under Evid. R. 705 for lack of a factual foundation. We found no Evid. R. 705 violation, however, and determined that the doctor's testimony was based upon "specific data" in the medical records relating to Wells' cause of death. The physicians' testimony inWells was specific to Wells' individual treatment and was directed to causation and liability. The portion of Vavul-Roediger's testimony to which Collins objects, however, was not specific to the victim herein but was merely provided to assist the trier of fact in understanding the manifestation or lack thereof of injuries in the context of childhood sexual abuse. We see no plain error in its admission. *Page 14 
 {¶ 51} Further, given Vavul-Roediger's strong qualifications, in declining to object to them, counsel for Collins avoided the likelihood that the State would then ask follow-up questions on redirect that would further enhance Vavul-Roediger's expertise in the eyes of the jury, a tactical decision that does not amount to ineffective assistance of counsel. Presuming that counsel for Collins rendered adequate assistance, and in light of all the circumstances, we cannot say that Collins' counsel's failure to object to Vavul-Roediger's testimony was outside the wide range of professionally competent assistance. Finally, we do not find that if Collins' counsel had objected to Vavul-Roediger's testimony, given the overwhelming evidence of Collins' guilt, that the outcome of the trial would have been different; the victim was left in Collins' care and identified him as her attacker, the rape kit yielded samples matching Collins' DNA, medication matching that described by the victim and found in her system was located in Collins' living quarters, and Collins left the victim alone at the scene and was later found hiding there by deputies.
 {¶ 52} Collins' second and third assignments of error are overruled.
 {¶ 53} Collins fourth assignment of error is as follows:
 {¶ 54} "COLLINS WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY DEFENSE COUNSEL'S FAILURE TO OBJECT TO THE EXPERT TESTIMONY OF MARY J. CICCO."
 {¶ 55} According to Collins, Cicco's testimony regarding the unidentifiable semen found on the victim's oral and vaginal swabs was inadmissible under Evid. R. 403(A). The State responds that Cicco testified to a reasonable degree of scientific certainty that sperm cells were present on the oral and vaginal swabs, and defense counsel's performance was not deficient for failing to object. Further, the State argues that the probative value of Cicco's *Page 15 
testimony is undisputed, and that Collins has failed to establish that the evidence was unfairly prejudicial. Collins replies, "defense counsel's failure to object to this testimony allowed the State to infer that the semen belonged to Collins. The presence of semen on the oral and vaginal swabs was the only evidence of penetration. Collins' right to a fair trial was compromised by defense counsel's failure to object."
 {¶ 56} Evid. R. 403 provides, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." "Evid. R. 403 speaks in terms of unfair prejudice. Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant. It is only the latter that Evid. R. 403 prohibits." State v. Skatzes, 104 Ohio St.3d 195,819 N.E.2d 215, 2004-Ohio-6391.
 {¶ 57} Cicco did not testify that the semen found on the oral and vaginal swabs originated from Collins, but merely that sperm cells of unidentifiable origin were present. Since there was insufficient material on the oral and vaginal swabs to match Collins' DNA, Collins' counsel, as a matter of trial strategy, may have determined that the testimony, unchallenged, would be favorable to Collins because it might suggest that the semen came from someone other than Collins. In other words, counsel may have determined that Cicco's testimony allowed for a competing inference regarding the origin of the semen. Further, Collins faced only one, and not multiple counts of rape, and there was overwhelming evidence before the jury, discussed above, such that any objection to Cicco's testimony, based on Evid. R. 403, would not have altered the outcome of the trial.
 {¶ 58} Finally, we disagree with Collins' argument that the oral and vaginal swabs represented the only evidence of penetration. The semen on the anal/rectal swab matched *Page 16 
Collins' DNA profile, and Johnson testified that the Wood's Lamp procedure did not reveal any stains on the exterior of the victim's body, suggesting that the anal/rectal semen sample came from within the victim's body.
 {¶ 59} There being no merit to Collins' fourth assignment of error, it is overruled.
 {¶ 60} Collins' fifth assignment of error is as follows:
 {¶ 61} "COLLINS WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY DEFENSE COUNSEL'S FAILURE TO REQUEST AN IN-CHAMBERS HEARING REGARDING THE ADMISSIBILITY OF THE STATE'S PROPOSED EVIDENCE OF COLLINS' SEXUAL ACTIVITY"
 {¶ 62} According to Collins, his counsel was deficient for not filing a motion in limine requesting a hearing pursuant to R.C. 2907.02(E) to address the admissibility of Cicco's testimony regarding the semen she found matching Collins' DNA profile on the victim's anal swab and clothing, as well as the unidentifiable semen on the oral and vaginal swabs.
 {¶ 63} The State responds that R.C. 2907.02(D), the rape shield law, specifically allowed for Cicco's testimony, and so counsel had no reason to request an admissibility hearing under R.C. 2907.02(E).
 {¶ 64} Collins replies that his counsel's failure to request a hearing prejudiced Collins and usurped his right to a fair trial.
 {¶ 65} R.C. 2907.02(E) provides, "Prior to taking testimony or receiving evidence of any sexual activity of the * * * defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers * * * ." R.C. 2907.02(D) provides: "Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual *Page 17 
activity shall not be admitted under this section unless it involvesevidence of the origin of semen * * *." (Emphasis added).
 {¶ 66} Cicco's testimony clearly involved the origin of the semen contained in the victim's rape kit, which is the heart of the case. Collins' counsel was not ineffective for failing to request a hearing on its admissibility, and Collins has not demonstrated that the outcome of the trial would have been different but for the alleged error. Collins' fifth assignment of error is overruled.
 {¶ 67} Collins' sixth assignment of error is as follows:
 {¶ 68} "THE TRIAL COURT ERRED BY NOT INSTRUCTING THE JURY ON THE LESSER-INCLUDED OFFENSE OF GROSS SEXUAL IMPOSITION."
 {¶ 69} According to Collins, "the jury could have found against the State on the issue of penetration, (i.e. sexual conduct) and have found for the State on the remaining element of `sexual contact.'" Collins argues that the victim's statement that Collins "tried" to rape her belies the act of penetration. Further, Collins argues, his "semen was found on the child's clothes and on the anal rectal swab on which Dr. Johnson admittedly took samples from both outside and inside the child's body. The jury could have reasonably inferred from the evidence that Collins touched the child's buttock for purposes of sexual gratification."
 {¶ 70} The State responds that penetration was established by Johnson's testimony regarding application of the Wood's Lamp and the lack of staining visible outside the victim's body, and that there was no evidence offered to refute the evidence of penetration. Accordingly, argues the State, an instruction on gross sexual imposition was not warranted.
 {¶ 71} We note that, while the trial court declined to instruct the jury on the lesser included offense of gross sexual imposition, it did provide an instruction on the lesser included *Page 18 
offense of attempted rape.
 {¶ 72} "The answer to the question of whether to instruct a jury on an included offense requires a two step analysis. The court must first determine whether the offense may be a lesser included offense. If the offense may be lesser included the court must then determine whether the evidence warrants the giving of the lesser included instruction.
 {¶ 73} "The pertinent difference between the rape and gross sexual imposition charges under consideration is in the difference between `sexual conduct' which is an essential element of rape and `sexual contact' which is an essential element of gross sexual imposition."State v. Gregory (Aug. 19, 1994), Montgomery App. No. 14187.
 {¶ 74} Sexual conduct "means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 75} Sexual contact "means any touching of an erogenous zone of another, including without limitation the thigh, genitals, pubic regions, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 76} The Ohio Supreme Court has already determined that gross sexual imposition is a lesser included offense of rape. State v. Johnson
(1988), 36 Ohio St.3d 224, 522 N.E.2d 1082.
 {¶ 77} "Once a court has concluded that an offense may be a lesser included offense the court must then proceed to the second step and determine whether the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the *Page 19 
lesser included offense. (Internal citation omitted).
 {¶ 78} "Where the evidence supports the giving of the lesser included offense charge the failure to give the instruction constitutes prejudicial error. (Internal citation omitted)
 {¶ 79} "It is difficult to perceive how a person could engage in sexual conduct and not at the same time be involved in sexual contact.
 {¶ 80} "There is no question but that the included offense charge should be given where the trial focuses on a dispute as to whether the sexual activity was essentially conduct or contact.
 {¶ 81} "However, where the defendant asserts a complete defense to all of the substantial elements of the crime charged an instruction on a lesser included offense may not be required. (Internal citation omitted).
 {¶ 82} "If the evidence adduced on behalf of the defense is such that if accepted by the trier of fact it would constitute a complete defense to all substantive elements of the crime charged, the trier of fact will not be permitted to consider a lesser included offense unless the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which, by themselves, would sustain a conviction upon a lesser included offense.
 {¶ 83} "The persuasiveness of the evidence regarding the lesser included offense is irrelevant. If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser offense must be given. The evidence must be considered in the light most favorable to the defendant."Gregory.
 {¶ 84} The anal/rectal swab from the victim's rape kit revealed the presence of semen matching Collins' DNA profile. While Johnson admitted that he swabbed the outer as well as *Page 20 
the inner portion of the victim's anus and rectum, as discussed above, the Wood's Lamp did not indicate any staining on the outer portion of the victim's body in that (or any other) area, a fact consistent with penetration. The victim's statement that Collins "tried" to rape her does not refute the evidence of penetration as Collins argues; the victim was heavily sedated and her memory of the events of June 10, 2006 was impaired. Since the evidence presented at trial would not reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense, there was no prejudicial error in the trial court's failure to give an instruction on gross sexual imposition, and Collins' sixth assignment of error is overruled.
 {¶ 85} Collins' seventh and eighth assignments of error are related and we will consider them together. They are as follows:
 {¶ 86} "THE TRIAL COURT ERRED BY OVERRULING COLLINS' MOTIONS FOR JUDGMENT OF ACQUITTAL PURSUANT TO CRIM.R. 29."
 {¶ 87} And "THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 88} Collins argues, regarding the child endangering charge, that the State failed to prove that Collins caused serious physical harm to the victim. Regarding the rape charge, Collins again argues that there was no evidence of penetration. The State responds that Collins caused a substantial risk of death for the victim and a temporary substantial incapacity by giving her Lunesta and Nortriptyline.[1]
 {¶ 89} "When considering a Crim. R. 29 motion for acquittal, the trial court must *Page 21 
construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions on whether the evidence proves each element of the offense charged beyond a reasonable doubt. (Internal citation omitted). The motion will be granted only when reasonable minds could only conclude that the evidence fails to prove all of the elements of the offense. (Internal citation omitted).
 {¶ 90} "A Crim. R. 29 motion challenges the legal sufficiency of the evidence. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. (Internal citation omitted). The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus ofState v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 91} "`An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Terrell, Montgomery App. No. 22108, 2008-Ohio-1863.
 {¶ 92} R.C. 2919.22(A) defines child endangering as follows: "No person, who is the * * * person having custody or control * * *of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." Serious physical harm includes "[a]ny physical harm that carries a substantial risk of death," and "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity." *Page 22 
R.C. 2901.01(A)(5)(b) and (c).
 {¶ 93} R.C. 2907.02(A)(1)(b) provides, "No person shall engage in sexual conduct with another * * * when * * *[t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 94} Viewing the totality of the evidence in a light most favorable to the State, we conclude that the evidence admitted at trial, if believed, is sufficient to convince the average mind of Collins' guilt beyond a reasonable doubt. In other words, any rational trier of fact could have found the essential elements of rape and child endangering proven beyond a reasonable doubt. The testimony of the victim and the other witnesses, as well as the physical evidence, make clear that Collins not only raped the victim but he created a substantial risk to her health and safety when, in violation of his duty of care, he gave her adult prescription medications in combination, and then left her alone and incapacitated. Collins' convictions are therefore supported by legally sufficient evidence.
 {¶ 95} "When an appellate court analyzes a conviction under the manifest weight of the evidence standard it must review the entire record, weigh all of the evidence and all the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (Internal citations omitted). Only in exceptional cases, where the evidence `weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." State v. Dossett, Montgomery App. No. 20997,2006-Ohio-3367.
 {¶ 96} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve."State v. DeHass (1997), 10 Ohio St.2d 230, 231, *Page 23 227 N.E.2d 212. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 97} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict.State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 98} As to the rape charge, Collins argues, again, that there was no direct evidence of penetration. As to the endangering children charge, Collins argues, "there was no evidence of serious physical harm other than speculation."
 {¶ 99} As previously discussed, the State's evidence, if believed, shows that Collins drugged, raped and abandoned the victim while she was in his care. The jury did not lose its way and create such a manifest injustice that a new trial is warranted, simply because it chose to believe the State's version of events. It was for the jury to evaluate the credibility of the State's witnesses and their testimony.
 {¶ 100} Since Collins' conviction is supported by sufficient evidence and is not against the manifest weight of the evidence, Collins' seventh and eighth assignments of error are overruled.
 {¶ 101} Collins' ninth assignment of error is as follows:
 {¶ 102} "THE TRIAL COURT'S SENTENCE OF LIFE WITHOUT PAROLE ON THE *Page 24 
RAPE CHARGE WAS CONTRARY TO LAW AND IN VIOLATION OF COLLINS' RIGHT TO A JURY TRIAL GUARANTEED BY THE SIXTH AMENDMENT."
 {¶ 103} According to Collins, since the separate indictment on the rape charge did not allege serious physical harm, he was not given the notice required under Crim. R. 7(A) of all of the elements of the offense with which he was charged. Further, he argues that the trial court engaged in impermissible fact finding in sentencing him to life without parole "because the jury verdict on the rape charge filed on July 16, 2007, did not contain a factual finding that serious physical harm resulted to the child," citing State v. Foster (2006), 109 Ohio St.3d 1,2; Blakely v. Washington (2004), 542 U.S. 296, 301.
 {¶ 104} "An appellate court reviewing a sentence imposed by the trial court may `vacate the sentence and remand the matter to the sentencing court for resentencing' only if it finds by clear and convincing evidence that `the record does not support the sentencing court's findings' or `that the sentence is otherwise contrary to law.'"State v. Barger, Champaign App. No. 2006-CA-12, 2006-Ohio-5559.
 {¶ 105} The version of R.C. 2907.02(B) in effect at the time of the offense provided, in relevant part, "if the victim under division (A)(1)(b) of this section is less than ten years of age, whoever violates division (A)(1)(b) of this section shall be imprisoned for life." Collins' life sentence was mandatory and is not contrary to law.
 {¶ 106} Finally, Collins did not object to his sentence at the trial court level. Collins objects herein pursuant to State v. Foster (2006),109 Ohio St.3d 1, and Blakely v. Washington (2004), 542 U.S. 296, 301. Because Foster and Blakely were decided prior to Collins' conviction and sentence, given Collins' lack of objection in the trial court pursuant to those authorities, Collins forfeited the issue for appellate purposes. State v. Payne, *Page 25 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306 ("forfeiture is a failure to preserve an objection, and since [Collins] failed to timely assert his rights under Blakely [and Foster], his failure to preserve the objection must be treated as a forfeiture.")
 {¶ 107} There being no merit to Collins' ninth assignment of error, it is overruled.
 {¶ 108} The judgment of the trial court is affirmed.
GRADY, J. and GLASSER, J., concur.
(Hon. George M. Glasser, retired from the Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
R. Lynn Nothstine Richard A. F. Lipowicz Hon. Mary L. Wiseman
[1] The State notes that "Collins has failed to provide this Court with a typed transcript of the testimony of all witnesses who appeared at trial." In fact, Collins did provide a complete transcript of the proceedings, although that testimony is transcribed out of order. *Page 1