OPINION
{¶ 1} Defendant, Deangelo Williams, appeals from his conviction and sentence for murder.
 {¶ 2} On the evening of November 12, 2006, April Jackson went out with one of her friends. Jackson's son, Johwan Satterfield, and her infant daughter, Kennedy, were left in *Page 2 
the care of Jackson's brother, Phillip Smith. Defendant Deangelo Williams, who is April Jackson's live-in boyfriend and the father of Kennedy, also went out that night with one of his friends. Both Jackson and Defendant eventually ended up at the Cotton Club on Salem Avenue in Dayton. While at the Cotton Club, April Jackson asked a man to watch the door while she used the men's restroom because the women's restroom was crowded.
 {¶ 3} After April Jackson left the Cotton Club she picked up her two children and asked her brother, Phillip Smith, to come home with her. Jackson arrived at her apartment at 1633 Kings Mill Court in Dayton, and began cooking. Her seven year old son, Johwan, was in the kitchen with her. Smith stayed in the living room with Jackson's daughter, Kennedy.
 {¶ 4} Shortly after midnight on November 13, 2006, Defendant Williams arrived at the apartment and began arguing with April Jackson. Defendant went upstairs, where he retrieved a large green Army duffel bag and a camouflage backpack. Defendant came back downstairs and re-entered the kitchen. Smith heard Defendant say, "So that's how you feel," which was followed by several gunshots. Defendant then came into the living room and pointed a gun at Smith, pulling the trigger twice, but the gun did not fire. At that point *Page 3 
Defendant left.
 {¶ 5} Smith found April Jackson lying face down on the kitchen floor. Jackson's son, Johwan, who had witnessed his mother's shooting, was curled up in a fetal position. Smith called 911, but Jackson died from her gunshot wounds before medics could transport her to a hospital. Defendant was arrested a few hours later at the home of his aunt.
 {¶ 6} Defendant was indicted on one count of felony murder, R.C. 2903.02(B), and one count of felonious assault, R.C. 2903.11(A)(2). Both charges were accompanied by a three year firearm specification. R.C. 2941.145. Following a jury trial, Defendant was found guilty of murder and the accompanying firearm specification, but not guilty of felonious assault. The trial court sentenced Defendant to fifteen years to life for murder, plus an additional and consecutive three year prison term on the firearm specification, for a total aggregate sentence of eighteen years to life.
 {¶ 7} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 8} "APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED THROUGH THE TRIAL COURT'S FAILURE TO VOIR DIRE *Page 4 
JURORS OR WITNESSES CONCERNING THE BAILIFF'S PREJUDICIAL REMARKS AND THE TRIAL COURT'S FAILURE TO ADEQUATELY VOIR DIRE THE BAILIFF CONCERNING THE SUBSTANCE OF THE REMARKS."
SECOND ASSIGNMENT OF ERROR
 {¶ 9} "APPELLANT'S RIGHT TO DUE PROCESS, A FAIR TRIAL, AND EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED THROUGH DEFENSE COUNSEL'S FAILURE TO VOIR DIRE JURORS OR WITNESSES CONCERNING THE BAILIFF'S PREJUDICIAL REMARKS AND DEFENSE COUNSEL'S FAILURE TO ADEQUATELY VOIR DIRE THE BAILIFF CONCERNING THE SUBSTANCE OF THE REMARKS."
THIRD ASSIGNMENT OF ERROR
 {¶ 10} "APPELLANT'S RIGHT TO DUE PROCESS, A FAIR TRIAL, AND EFFECTIVE ASSISTANCE OF COUNSEL WERE ALL VIOLATED AS A RESULT OF THE BAILIFF'S PREJUDICIAL REMARKS."
FOURTH ASSIGNMENT OF ERROR
 {¶ 11} "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT A MISTRIAL IN THIS CASE BECAUSE OF THE BAILIFF'S PREJUDICIAL REMARKS."
 {¶ 12} During the trial the court's bailiff made comments to anther bailiff in the hallway outside the courtroom concerning Defendant's guilt and the testimony of the victim's young son, Johwan Satterfield. Those remarks were overheard by potential witnesses who were sitting in the hallway. *Page 5 
Defendant claims that he was denied a fair trial because the trial court failed to voir dire the jurors and the witnesses about this incident. Defendant also contends that the trial court abused its discretion when it overruled his motion for a mistrial, and that defense counsel rendered ineffective assistance by failing to request that the jurors and witnesses be voir dired about the bailiff's remarks.
 {¶ 13} At the conclusion of the State's case, defense counsel brought to the trial court's attention the comments the court's bailiff had made, which were overheard by some of Defendant's family members. Defense counsel admitted that he had no knowledge that the remarks ever got to the jury. When the trial court inquired of defense counsel what witness(es) may have overheard the comments, defense counsel replied, "Rose Williams." Although she was on the State's list of potential witnesses, the record reflects that Rose Williams did not testify at Defendant's trial. Accordingly, whether she overheard the bailiff's comments could not affect the fairness of Defendant's trial.
 {¶ 14} The trial court inquired into the matter with counsel for both parties, and defense counsel reiterated that he was not alleging that any of the jurors heard the bailiff's comments. The prosecutor pointed out that the jurors are not *Page 6 
out in the hallway outside the courtroom, where witnesses sit. With respect to whether any witnesses may have heard the comments, the prosecutor pointed out that the State's lay witnesses are brought up to the hallway outside the courtroom one at a time by a victim-witness advocate, but not until the previous witness is being cross-examined.
 {¶ 15} The trial judge questioned his bailiff about her remarks as follows:
 {¶ 16} "COURT: Well, what's the issue, here, Ann, and — is that it's been reported to Mike by certain family members of Mr. Williams.
 {¶ 17} "DEFENSE COUNSEL: Yes, your Honor.
 {¶ 18} "COURT:-that they overheard you talking perhaps to another bailiff, perhaps to Mr. Hamilton across the hall, regarding Mr. Williams' guilt and some comments about the testimony from the seven-year-old son. Do you recall making any statements relative to either of those issues, either the testimony from the seven-year-old or more particularly the guilt of Mr. Williams?
 {¶ 19} "BAILIFF: In front of someone other than another bailiff?
 {¶ 20} "COURT: Yeah.
 {¶ 21} "BAILIFF: I would say, no, not in front of someone *Page 7 
other than another bailiff.
 {¶ 22} * * *
 {¶ 23} "COURT: Did you ever say anything that could have been overheard by the jury regarding any issue involving this case? Any substantive issue involving this case? The evidence —
 {¶ 24} "BAILIFF: By the jury?
 {¶ 25} "COURT: Yes.
 {¶ 26} "BAILIFF: No.
 {¶ 27} "COURT: Okay." (T. 290).
 {¶ 28} The court also questioned the victim-witness advocate, Amy Burr, who had escorted the State's three lay witnesses to the courtroom when it was their turn to testify. Before seven year old Johwan Satterfield testified, Burr waited in the hallway outside the courtroom with him. Burr sat in the courtroom during Johwan's direct examination. When his cross-examination began, Burr returned to the victim-witness office where Phillip Smith was waiting, and she escorted him to the hallway outside the courtroom and waited with Smith until he was called into the courtroom to testify. When cross-examination of Smith began, Burr returned to the victim-witness office to retrieve Charles Johnson, and Burr waited with him in the hallway outside the courtroom until he *Page 8 
was called to testify. Burr testified that at no time when she was in the hallway waiting with any of the State's witnesses did she hear the bailiff make any comments about Defendant's guilt or Johwan Satterfield's testimony.
 {¶ 29} After Burr's testimony, defense counsel moved for a mistrial to "protect the record." The trial court overruled that motion.
 {¶ 30} The decision whether to grant a mistrial lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Brown, 100 Ohio St.3d 51,2003-Ohio-5059. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v.Adams (1980), 62 Ohio St.2d 151.
 {¶ 31} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, *Page 9 
the result of the trial would have been different. Id., State v.Bradley (1989), 42 Ohio St.3d 136. Further, the threshold inquiry should be whether a defendant was prejudiced, not whether counsel's performance was deficient. Strickland.
 {¶ 32} The record fails to demonstrate that any witness who testified at Defendant's trial, or any juror, overheard whatever remarks the court's bailiff may have made. Thus, those comments could not affect Defendant's trial, and Defendant suffered no prejudice as a result. Under those circumstances Defendant's right to a fair trial was not violated, a mistrial was not warranted, and the trial court did not abuse its discretion in refusing to grant a mistrial.
 {¶ 33} Furthermore, defense counsel did not perform in a deficient manner, nor did Defendant suffer any prejudice, as a result of counsel's failure to request to voir dire the witnesses and jurors about the bailiff's comments. Based upon the court's inquiry into this matter and its questioning of its bailiff, the victim-witness advocate, and defense counsel, there was no reason or basis to believe that the jurors or any of the witnesses who testified overheard the bailiff's comments. Ineffective assistance of counsel has not been demonstrated. *Page 10 
 {¶ 34} Defendant's first, second, third and fourth assignments of error are overruled.
FIFTH ASSIGNMENT OF ERROR
 {¶ 35} "APPELLANT WAS UNFAIRLY PREJUDICED WHEN NUMEROUS JURORS SAW APPELLANT IN CUSTODY."
SIXTH ASSIGNMENT OF ERROR
 {¶ 36} "APPELLANT WAS PREJUDICED THROUGH INEFFECTIVE ASSISTANCE OF COUNSEL THROUGH COUNSEL'S FAILURE TO EFFECTIVELY QUESTION ALL JURORS CONCERNING THE INCIDENT IN WHICH CERTAIN JURORS SAW APPELLANT IN CUSTODY."
SEVENTH ASSIGNMENT OF ERROR
 {¶ 37} "THE TRIAL COURT FAILED TO GRANT A MISTRIAL WHEN JURORS SAW APPELLANT IN CUSTODY."
 {¶ 38} During a break in the jury's deliberations several of the jurors went to the basement of the court building where vending machines are located. While waiting for the elevator, some of the jurors saw Defendant in police custody as he was being escorted back to the jail. Although Defendant was handcuffed, none of the jurors reported seeing the handcuffs. One juror said she assumed Defendant was handcuffed. Other jurors indicated Defendant was with a group of other inmates who were wearing jail outfits. The jurors discussed this encounter with Defendant among themselves. *Page 11 
 {¶ 39} Defendant argues that as a result of this incident he was denied a fair trial, that the trial court abused its discretion in refusing to grant his request for a mistrial, and that his counsel rendered ineffective assistance because he failed to question all of the jurors about this incident.
 {¶ 40} In cases involving outside influences on jurors, trial courts are granted broad discretion in assessing the impact and determining the appropriate remedy. State v. Phillips, 74 Ohio St. 3d 72, 1995-Ohio-171.
 {¶ 41} The trial court, with the help of defense counsel and some of the jurors involved, was able to identify all seven jurors who may have observed Defendant in police custody. The trial court questioned those jurors and the police officers involved, and defense counsel participated in that questioning. None of the jurors recalled seeing Defendant in handcuffs or jail clothing. The jurors did see other inmates who were being transported back to the county jail in jail clothes and handcuffs.
 {¶ 42} Every juror involved in this incident who saw or might have been in a position to see Defendant stated that their encounter with Defendant did not in any way affect their deliberations, nor did seeing other inmates in jail clothes and handcuffs affect their decision in this case. On this *Page 12 
record, we cannot find that Defendant was denied a fair trial as a result of this incident, or that the trial court abused its discretion in denying Defendant's motion for a mistrial. All of the jurors involved who may have encountered Defendant were questioned and defense counsel participated in that inquiry No deficient performance by counsel has been demonstrated, much less resulting prejudice.
 {¶ 43} Defendant's fifth, sixth, and seventh assignments of error are overruled.
EIGHTH ASSIGNMENT OF ERROR
 {¶ 44} "APPELLANT WAS DEPRIVED OF DUE PROCESS AND A FAIR TRIAL THROUGH PROSECUTORIAL MISCONDUCT."
 {¶ 45} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Jones,90 Ohio St.3d 403, 420, 2000-Ohio-187, citing State v. Smith (1984),14 Ohio St.3d 13, 14. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v.Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced and *Page 13 
his conviction will not be reversed. See State v. Loza (1994),71 Ohio St.3d 61, 78, 1994-Ohio-409. In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144.
 {¶ 46} Defendant argues that the prosecutor unfairly appealed to the juror's emotions during argument. The prosecutor spoke in his opening statement of the fact that April Jackson's murder left her two young children without their mother and that one of those children, seven year old Johwan Satterfield, had watched his mother being shot and killed. In closing argument the prosecutor discussed the fact that Defendant shot April Jackson multiple times in the back, in front of her seven year old son. The prosecutor commented that the young man remembers everything and would never forget watching his mother being gunned down by Defendant.
 {¶ 47} Such comments and argument were not improper. They were based upon what the prosecutor expected the evidence would show and what the evidence presented at trial did in fact show, contending that Johwan Satterfield's testimony was credible and should be believed because it was based upon a traumatic event that would not be forgotten by that child. *Page 14 
The prosecutor did not offer his personal opinion of the child's credibility.
 {¶ 48} Defendant next complains that the prosecutor mischaracterized the evidence in his closing argument. Phillip Smith testified that just before Defendant shot April Jackson he heard Defendant say, "So that's how you feel." During closing argument the prosecutor described what Phillip Smith heard Defendant say as something to the effect of, "Well, I guess this is the way you want it to be." The prosecutor misspoke, but did not mischaracterize the evidence. By prefacing his comment with, "something to the effect of," the prosecutor acknowledged that his words were not a verbatim quote of Smith's testimony. Furthermore, such a minor variation is inconsequential and could not have affected the outcome of Defendant's trial.
 {¶ 49} Defendant also complains that the prosecutor urged the jury to convict based upon a public demand for justice by commenting that the jury should find Defendant guilty of felonious assault because, unless they did, justice would never be served. The trial court sustained Defendant's objection to that comment, removing it from the jury's consideration. Furthermore, Defendant could not have been prejudiced by the comment because the jury acquitted him of *Page 15 
felonious assault.
 {¶ 50} Defendant additionally complains because the prosecutor stated "he (Defendant) couldn't just leave without killing her because if he wasn't going to have her, no one was." This was not a mischaracterization of the evidence. The prosecutor is entitled to some latitude in closing argument as to what the evidence shows and the reasonable inferences that may be drawn from the evidence. State v.Smith (1984), 14 Ohio St.3d 13. The evidence showed that Defendant was angry and jealous over what had happened earlier at the Cotton Club when April Jackson asked another man, instead of Defendant, to watch the men's restroom door while she used the restroom. Defendant told a friend he should have been the man watching the door for Jackson. It was not unreasonable based upon the evidence presented for the prosecutor to infer that Defendant killed April Jackson rather than allow her to become involved with other men. In any event, it is clear that the jury would have convicted Defendant even absent this comment.
 {¶ 51} Finally, Defendant complains that the prosecutor's use of Defendant's nickname, "D-Lo," during the direct examination of April Jackson's son, Johwan, disparaged him in front of the jury. Defendant's claim that he suffered *Page 16 
prejudice as a result of the prosecutor's use of a purported nickname is sheer speculation. There is nothing inherently disparaging about the nickname, and its use by the prosecutor was not so prejudicial that it denied Defendant a fair trial.
 {¶ 52} Defendant's eighth assignment of error is overruled.
NINTH ASSIGNMENT OF ERROR
 {¶ 53} "APPELLANT WAS DEPRIVED OF A FAIR TRIAL THROUGH THE INTRODUCTION OF GRAPHIC PHOTOGRAPHIC EVIDENCE."
 {¶ 54} Defendant complains about the admission of two gruesome autopsy photographs, States Exhibits 12 and 13, that depict the bullet wound to April Jackson's heart after it had been removed from her body during the autopsy.
 {¶ 55} In State v. Reeves (March 12, 1999), Montgomery App. No. 16987, this court stated:
 {¶ 56} "In determining the admissibility of a photograph under Evid. R. 403, `a trial court may reject an otherwise admissible photograph which, because of its inflammatory nature, creates a danger of prejudicial impact that substantially outweighs the probative value of the photograph as evidence.' State v. Morales (1987), 32 Ohio St.3d 252,257, 513 N.E.2d 267. Absent such a danger, the photograph is admissible.Id. at 257, 513 N.E.2d 267. `[T]he fact that a photograph may be considered gruesome is not, in and of *Page 17 
itself, grounds for preventing its introduction into evidence.'State v. Apanovitch (1987), 33 Ohio St.3d 19, 25, 514 N.E.2d 394. The trial court has broad discretion in balancing the probative value against the danger of unfair prejudice, and its determination will not be disturbed on appeal absent a clear abuse of discretion. State v.Harcourt (1988), 46 Ohio App.3d 52, 55, 546 N.E.2d 214."
 {¶ 57} Dr. Pandey testified at trial that the bullet that pierced Jackson's heart was the fatal shot. State's Exhibits 12 and 13 depict the bullet wounds to Jackson's heart. In admitting this evidence, the trial court noted that the photographs are clinical in nature and are important because they show where the fatal bullet entered and exited Jackson's heart. To that extent the photographs assist the jury in understanding Dr. Pandey's testimony as to the cause of Jackson's death. Even if the photos are somewhat gruesome, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. Evid. R. 403(A). The trial court did not abuse its discretion in admitting this evidence.
 {¶ 58} Defendant's ninth assignment of error is overruled.
TENTH ASSIGNMENT OF ERROR
 {¶ 59} "THE CUMULATIVE EFFECT OF THE ERRORS AT TRIAL *Page 18 
 DEPRIVED APPELLANT OF A FAIR TRIAL."
 {¶ 60} Defendant argues that the cumulative effect of the errors occurring during the trial deprived him of a fair trial. State v.DeMarco (1987), 31 Ohio St.3d 191. Having found no prejudicial error in the trial court's proceedings, however, there can be no "cumulative effect." State v. Blankenship (1995), 102 Ohio App.3d 534.
 {¶ 61} Defendant's tenth assignment of error is overruled. The judgment of the trial court will be affirmed.
 WOLFF, P.J. And FAIN, J., concur. *Page 1